# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3:18 mj 530
CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER (501) 909-4056 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A - This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2314 | interstate transportation of stolen property |
| 18 USC 371 | conspiracy to transport stolen property |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA MICHAEL RUNNELS, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-25-18

*Judge's signature*

City and state: DAYTON, OHIO    SHARON L. OVINGTON U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(501) 909-4056** and the cellular telephone assigned call number **(501) 909-3978** ("the Account"), that are stored at premises controlled by **Sprint Spectrum L.P.** ("the Provider"), headquartered at **6480 Sprint Parkway Overland Park, KS 66251**

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from between September 1, 2017 until the present:

    a.    The following information about the customers or subscribers of the Account:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii.    information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2314 and 18 U.S.C. § 371 involving **JESSE SPURLOCK** and/or **KENNETH EVANS** during the time period between September 1, 2017 and the present.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONES ASSIGNED RESPECTIVE CALL NUMBERS **(501) 909-4056** and **(501) 909-3978,** WHICH ARE STORED AT PREMISES CONTROLLED BY **SPRINT SPECTRUM L.P.** | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Runnels being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain cellular telephones with assigned call numbers **(501) 909-4056 and (501) 909-3978**, ("**the SUBJECT PHONES**"),that is stored at premises controlled by **Sprint Spectrum L.P.,** a wireless telephone service provider headquartered in Overland Park, KS. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703I(1)(A) to require **Sprint Spectrum L.P.** to disclose to the U. S. Government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since 2017. I am currently assigned to the Dayton, Ohio Resident Agency of the Cincinnati Field Office. During my tenure with the FBI, I have personally participated in criminal and national security investigations. As such, I have gained both

knowledge and experience in gathering and collecting evidence related to violations of Title 18 of the United States Code and other violations of federal law. Prior to joining the FBI, I was employed with a private security company gaining knowledge and experience in numerous internal investigations.

  3. The facts in this affidavit are derived from my personal observations, my training and experience, and information obtained from other agents and witnesses familiar with the subject investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

  4. Based on the facts set forth in this affidavit, there is probable cause to believe that certain offenses to include interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and conspiracy in violation of 18 U.S.C. § 371 may have been committed or are being committed by individuals identified as **JESSE SPURLOCK** and/or **KENNETH EVANS**. **JESSE SPURLOCK's** last known place of residence is 629 Cranwood Circle, New Lebanon, Ohio. **KENNETH EVANS'** last known place of residence is 1559 Azalea Dr., Dayton, Ohio. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of the above referenced crimes as further described in Attachment B.

## PROBABLE CAUSE

  5. The FBI in conjunction with multiple state and local law enforcement agencies have been investigating a series of burglaries which have used a similar *modus operandi* at multiple retail establishments located throughout the Southern District of Ohio and the Commonwealth of Kentucky. These burglaries include the following:

  a. On October 22, 2017, at approximately 11:31p.m., a burglary occurred at Harris Jewelers located at 2343 W. Main Street, Troy, OH;

2

    b.    On December 20, 2017, at approximately 2:00 a.m., a similar burglary occurred at Direct Jewelry Outlet located at 200 N. Springboro Pike, Miamisburg, OH;

    c.    On December 29, 2017, at an unknown time, a similar burglary occurred at Bacovin Jewelers located at 1051 Stone Drive, Harrison, OH;

    d.    On January 11, 2018 at approximately 2:24 a.m., a similar burglary occurred at Krumbholtz Jewelry located at 9399 Shelly Lane, Montgomery, OH;

    e.    On January 29, 2018 at an unknown time, a similar burglary occurred at Kamals Gold Center located at 4161 North Main Street, Dayton, OH;

    f.    On February 23, 2018 at an unknown time, a similar burglary occurred at Advance America located at 5420 Springboro Pike, Moraine, OH;

    g.    On February 28, 2018 at approximately 2:40 a.m., a similar burglary occurred at Flagway Gas Station located at 635 Dayton Ave, Washington Court House, OH; and

    h.    On March 3, 2018 at approximately 4:20 a.m., a similar burglary occurred at Mikado Restaurant located at 1574 Covington Ave, Piqua, OH. On March 15, 2018 at approximately 2:00 a.m., a similar burglary occurred at Check into Cash located at 155 E. New Circle Drive, Lexington, KY.

6.    On October 22, 2017, in the early morning hours two males were seen on surveillance video pulling into the parking lot of Harris Jewelers located at 2343 W. Main Street, Troy, OH. The males were driving a vehicle belonging to Krieger Beard Services that was later reported stolen and later recovered a short distance from the location. The two males removed a ladder from this vehicle and used it to access the roof of Harris Jewelers. After a few minutes the males climbed off the roof and placed the ladder next to a neighboring business.

7.    At approximately 11:21 a male returned to the location and again accessed the roof of Harris Jewelers using the ladder that had been left at the scene. At approximately 12:31 a.m. on October 23, 2017, the male who had climbed onto the roof exited through the back door of the business. The male then reenters the store at approximately 1:07 a.m. and exits again at approximately 1:44 a.m. The total estimated loss was approximately $286,587.24.

8. The point of entry was later found to be a hole that was cut through the tin roof where the male entered the attic area and then subsequently dropped through the ceiling into the office.

9. While inside the store, the male could be seen on surveillance video walking around on the phone checking various cabinets before emptying all of them. The male looked at the safe but made no attempts to tamper with it.

10. Law enforcement detectives from the Troy Police Department located a set of earbuds laying near the ladder that was used to access the roof. The earbuds were sent to BCI for analysis and DNA found on the earbuds were determined to belong to **JESSE SPURLOCK** (hereinafter referred to as "**SPURLOCK**").

11. Harris Jewelers checked their records and found that **SPURLOCK** had been in their business on October 2, 2017. He entered the store at three different times on that day and left his name with employees as he had told them he was looking for an engagement ring for his girlfriend. **SPURLOCK** told employee's that his girlfriend was Stacy Inderrieden and he left a phone number of (937) 469-1326.

12. Stacy was interviewed by detectives at a later date and she confirmed that the phone number did belong to **SPURLOCK** and they were previously engaged. She stated that she was never given an engagement ring prior to breaking up.

13. On October 22, 2017 at approximately 12:20 a.m., **KENNETH EVANS** (hereinafter referred to as "**EVANS**") was stopped by Ohio State Police in the area of the burglary. He was driving was blue Chevy Traverse (Ohio tag GXA2494).

14. Footage from nearby surveillance video of the stolen vehicle used in the burglary show that it was being followed by a dark in color Chevy Traverse.

4

15. On December 20, 2017 at approximately 10:00 a.m. Miamisburg Police Officers were dispatched to 200 N. Springboro Pike Suite #A, Miamisburg, Ohio on a report of a breaking and entering to the business that occurred over night. The business at that address is Direct Jewelry Outlet.

16. The investigation lead officers and detectives with Miamisburg Police Department to learn that an unknown suspect stole a U Haul box truck from a neighboring U Haul rental business, parked the vehicle to the rear of the Direct Jewelry Outlet at approximately 2:45 a.m., and access the roof of that business by getting on top of that vehicle. Once on the roof, the suspect cut a hole in the steel roof with a pair of manual tin snips.

17. The suspect gained entry into the business through the hole in the roof and broke the display cases inside. The suspect also attempted to gain entry into the business safe, but was unsuccessful. The suspect was inside the business for approximately two hours before exiting through the rear door. The total approximate loss to the business was $120,000.00.

18. On or about December 29, 2017 an attempted burglary occurred at the Bacovin Jewelers located at 1051 Stone Drive, Harrison, OH. The suspect removed the satellite dish from the roof and then used one of the "bolt holes" from the satellite dish as a starting point to cut through the roof of the business using tin snips.

19. The unknown suspect then entered the roof and walked on the steel trusses to maneuver through the business until he fell through the ceiling. At the point he fell through the ceiling, he ran to the front of the business and rolled over the display counter. He then exited the store without taking any merchandise.

20. On January 11, 2018 at approximately 2:24 a.m., Montgomery police officers were dispatched to Krumbholtz Jewelry located at 9399 Shelly Lane, Montgomery, OH for an

alarm. Upon arrival, officers discovered that the front window to the business was shattered, no suspects were located at the time.

21. At approximately 3:20 a.m. police officers did a perimeter check and found two large holes in the roof. One of the holes led to an area above the electrical room of the business. The alarm panel had been destroyed and multiple wires appeared to be cut. There was a flashlight that was still on located in the room where the panel would have been.

22. The flashlight was collected as evidence and sent to BCI for processing. DNA on the batteries to the flashlight returned to **SPURLOCK**.

23. After reviewing the surveillance footage, it was observed that one suspect ran out of the electrical room and attempt to exit through the front door. The door requires a key to be unlocked and opened. The suspect then attempts to break the glass but is unsuccessful. The suspect then proceeds to the front window, breaks the window with his foot, and flees. There appeared to be no merchandise taken and the approximate damage was estimated to be $1,700.

24. Surveillance footage from a nearby traffic camera revealed that a van registered to **EVANS** was found at the scene during the time of the burglary.

25. On January 29, 2018 at approximately 10:19 a.m. police officers with Montgomery County Sheriff's Office responded to Kamal's Gold Center located at 4161 North Main Street, Harrison Township, OH. The officers met with the owner of Kamal's Gold Center that stated they received at text message while at home on January 28, 2018 at approximately 5:00pm from the alarm company saying their store was possibly broken into. They went to Kamal's Gold Center and did not notice anything out of place so they secured the doors and left. Between the times they secured the doors and the time they arrived back at the store at 10:15 a.m. their store was broken into.

6

26. The owners advised when they arrived they noticed a hole in the ceiling of their business where they believe the suspects gained entry. The alarm system and wires were torn from the box and damaged. The suspects left a gas powered portable circular saw next to the owner's large safe where they attempted to gain entry by cutting a line approximately four inches long on the side of the safe. Approximate loss from Kamal's Gold Center was $1,700.00.

27. Officers with Montgomery County Sheriff's Office collected a bag of tools that was left at the scene by the suspects. In the bag was a glove with a blood drop on it. The glove was sent in for DNA analysis and positively identified **SPURLOCK**.

28. Between February 3, 2018 at approximately 11:30 pm and February 4, 2018 at approximately 8:25a.m. a safe was stolen from the Advance America located at 5420 Springboro Pike, Moraine, OH. The total loss including damage from the burglary was approximately $16,975.

29. The suspects made entry by cutting through the roof with metal tin snips and dropped into the ceiling. Inside the store it was discovered that the security panel was opened and the circuit board was broken. The backup battery was disconnected and the DVR was disconnected and removed from the scene.

30. Surveillance video of a neighboring business captured a suspicious vehicle pull into the rear of the business at approximate 11:41 p.m. on February 23, 2018. The vehicle in the video matched the van owned by **EVANS**.

31. On February 28, 2018 at approximately 2:40 a.m. the Flagway Gas Station located at 635 Dayton Ave., Washington Court House, Ohio was broken into. The suspects cut a hole in the roof and entered at that point to disable the alarm inside. The ATM machine inside was broken into and also a large amount of Marlboro cigarettes were stolen. The total approximate loss was $12,578.

32. On March 3, 2018 at approximately 4:20 a.m. the Mikado Restaurant located at 1574 Covington Ave, Piqua, OH was broken into. The suspects cut a hole in the metal roof with metal tin snips and entered the restaurant through the roof. They entered the alarm room and disabled the alarm system.

33. Two suspects were seen in surveillance video. They pried open cash registers and took the cash inside. Approximately $1,700 in loss was estimated.

34. On March 15, 2018 the Check into Cash located at 155 E. New Circle Drive, Lexington, KY was broken into. The suspect cut a hole in the roof and attempted to disable alarm. No property was taken but the estimated damage to the building was approximately $14,000.

35. On March 15, 2018 a search warrant was executed on **SPURLOCK**'s residence by a separate law enforcement organization. At the residence large amount of Marlboro cigarettes were found which was likely from the burglary that occurred on February 28, 2018 at the Flagway Gas Station located at 635 Dayton Ave, Washington Court House, Ohio.

36. At the same residence a black hat was found that matches the surveillance video from the burglaries that occurred on October 22, 2017 at Harris Jewelers located at 2343 W. Main Street, Troy, OH. It also matches the surveillance video from the December 20, 2017 burglary that occurred at Direct Jewelry Outlet located at 200 N. Springboro Pike, Miamisburg, OH.

37. On March 15, 2018 a search warrant was executed on **EVANS'** van by a separate law enforcement organization. Inside the van numerous power tools, clothing, sledge hammer, hole saw bits, saws, and gloves were collected.

38. The clothing that was recovered matched the clothing one of the suspects was wearing during the burglary that occurred on March 3, 2018 at the Mikado Restaurant in Piqua, OH as well as the burglary that occurred on March 15, 2018 at the Check into Cash in Lexington, KY.

39. Six phones were recovered inside **EVANS'** van and were analyzed based on a separate law enforcement's investigation and subsequent search warrant. During the analysis it was discovered that on one of the phones, LG LS676, the Direct Jewelry outlet was researched on its web history on December 19, 2017. The Direct Jewelry outlet in Dayton, OH was robbed on December 20, 2017.

40. Two of the six phones were analyzed by a separate law enforcement organization and determined to have phone numbers 501-909-4056 and 501-909-3978. The two phone numbers were connected to each other for a significant number of minutes during the early morning and/or late evening hours corresponding to the dates and times to a number of burglaries including:

    a. October 22, 2017 matching the approximate times for the burglary at Harris Jewelers in Troy, OH;

    b. December 20, 2017 matching the approximate times for the burglary at Direct Jewelry Outlet in Miamisburg, OH;

    c. December 29, 2017 during the early morning hours which corresponds to the burglary at Bacovin Jewelers in Harrison, OH;

    d. January 11, 2018 matching the approximate times for the burglary at Krumbholtz Jewelry in Montgomery, OH;

    e. January 29, 2018 matching the approximate times for the burglary at Kamal's Gold Center in Dayton, OH;

    f. February 23, 2018 during the early morning hours which corresponds to the burglary at Advance America in Moraine, OH;

g. March 3, 2018 matching the approximate times for the burglary at Mikado Restaurant in Piqua, OH; and

h. March 15, 2018 matching the approximate times for the burglary at Check into Cash in Lexington, KY.

41. On March 20, 2018 at approximately 11:15am a separate law enforcement was listening to recorded jail calls for **SPURLOCK** from Hamilton County Jail. The officer learned through the call that **SPURLOCK** called **EVANS** and expressed concerns that the police would gain access to the information on the cell phones that had been found inside **EVANS'** vehicle. **SPURLOCK** questioned whether police had found a "two for one" indicating that there was possibly a tool hidden somewhere inside the vehicle.

42. Law enforcement officers executed a second search warrant on **EVANS'** vehicle in which they found a hidden compartment which contained two ski masks identical to the ones worn by suspects during the following burglaries:

a. Direct Jewelry Outlet in Miamisburg, OH on December 20, 2017;

b. Bacovin Jewelers in Harrison, OH on December 29, 2017;

c. Krumbholtz Jewelry in Montgomery, OH on January 11, 2018;

d. Kamals Gold Center in Dayton, OH on January 29, 2018;

e. Mikado Restaurant in Piqua, OH on March 3, 2018; and

f. Check into Cash in Lexington, KY on March 15, 2018.

43. Based on my training and experience, I have learned that **Sprint Spectrum L.P.** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic

10

areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

44. Based on my training and experience, I know that **Sprint Spectrum L.P.** can collect cell-site data about the **SUBJECT PHONES**. I also know that wireless providers such as **Sprint Spectrum L.P.** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

45. Based on my training and experience, I know that wireless providers such as **Sprint Spectrum L.P.** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **Sprint Spectrum L.P.** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONES** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

46. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

47. I further request that the Court direct **Sprint Spectrum L.P.** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **Sprint Spectrum L.P.**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

48. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Michael Runnels
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on _July 25_, 2018

SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

12